IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
PATSY ORMSBY, JEREMY GILMORE,        )
                                     )
              Plaintiff,             )
                                     )
       v.                            )     Case No. 14-2039-RDR
                                     )
IMHOFF & ASSOCIATES, P.C.;           )
CHRISTOPHER R. WILLIAMS;             )
PAL A LENGYEL-LEAHU                  )
                                     )
              Defendant.             )
```

MEMORANDUM AND ORDER

This is a diversity action brought by Jeremy Gilmore and his grandmother, Patsy Ormsby, against Gilmore's former attorneys in a criminal case. Gilmore and Ormsby assert claims of legal malpractice, breach of contract, negligent misrepresentation, fraud and violations of the Kansas Consumer Protection Act (KCPA) against Imhoff & Associates, PC; Pal A. Lengyel-Leahu; and Christopher R. Williams. This matter is presently before the court upon (1) defendants' motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6)[1]; and (2) plaintiffs' motion to strike new arguments in defendants' reply.

---

[1]Defendants have moved for oral argument, but the court finds that oral argument would not substantially assist in its determination of these matters, so denies this motion.

1

I.

The court shall first consider the plaintiffs' motion to strike new arguments in the defendants' reply brief.  Plaintiffs contend that the following arguments raised in the reply should be stricken: (1) plaintiffs' malpractice claim fails to allege causation; (2) Gilmore cannot claim damages due to malpractice; (3) Ormsby lacks standing to bring the malpractice claims; and (4) Gilmore lacks standing to bring a KCPA violation.

A party is not entitled to raise new arguments in a reply brief.  See, e.g., U.S. Fire Ins. Co. v. Bunge N. Am., Inc., 2008 WL 3077074 at *9 n.7 (D.Kan. Aug. 4, 2008) (citing Minshall v. McGraw Hill Broadcasting Co., 323 F.3d 1273, 1288 (10th Cir. 2003)).
But, "if the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to those new materials." Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006).

The court agrees with the plaintiffs that these arguments were essentially newly raised in the defendants' reply brief.  There are some vague references to some of these arguments in the defendants' memorandum in support of its motion to dismiss, but there was no actual notice to the plaintiffs that these arguments were being seriously asserted.  Accordingly, the court

2

shall not consider any of these arguments in deciding the defendants' motion to dismiss.

To the extent that the defendants have asked that they be allowed to file a sur-reply to raise some of these arguments, this request shall be denied. Sur-replies are typically not allowed, but may be permitted in rare circumstances. The court sees no need to allow a sur-reply here.

## II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th

Cir. 2003).

In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff. See Zinermon v. Burch, 494 U.S. 113, 118 (1990); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). Allegations that merely state legal conclusions, however, need not be accepted as true. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

III.

The amended complaint in this case makes the following allegations. On May 26, 2009, Gilmore was convicted of conspiracy to distribute and possess with the intent to distribute more than 50 grams of methamphetamine in the United States District Court for the District of Kansas. As a result of his conviction, Gilmore faced a mandatory sentence of life imprisonment. Following the conviction, Ormsby and Lois Gilmore, Gilmore's mother, began looking at the internet to find attorneys to handle his post-conviction motions, sentencing and appeal. They found defendant Imhoff & Associate's website which advertised that it: (1) was a national law firm; (2) had won the reversal of many cases; (3) had "qualified and aggressive"

4

attorneys who "dont (sic) give up easily"; (4) had "the most competent, experienced and effective attorney[s] available"; and (5) had "aggressive and resourceful criminal defense attorney[s]" who were "intimately familiar with all facets of criminal defense." The website also indicated the following: "When it comes to criminal law cases, an experienced and effective criminal defense attorney can mean the difference between a prison sentence and reduced or dismissed charges."

After reading the website, Lois Gilmore called the law firm and talked to a "non-attorney case manager" who told her: (1) the law firm was actually the former Johnny Cochran Law Firm; (2) the firm had defended O.J. Simpson; (3) "You probably remember the catchy phrase"; and (4) if Gilmore's family wanted to hire Imhoff, they needed to act quickly and wire money to the firm. Lois Gilmore relayed this information to Ormsby and discussed their financial situation with other family members.

An aunt of Jeremy Gilmore provided money to pay the fees requested by Imhoff & Associates. On May 29, 2009, Ormsby retained Imhoff & Associates to represent Gilmore. Under the retainer agreement, Imhoff & Associates agreed to (1) file a motion for new trial, (2) advocate for Gilmore during the sentencing phase of his trial, and (3) pursue the direct appeal of Gilmore's conviction. For these services, Ormsby paid Imhoff

5

& Associates a non-refundable, flat-fee of $49,250 via a wire transfer on May 29, 2009. Ormsby also opened a trust account with Imhoff & Associates into which she paid an additional $5,000.

Imhoff & Associates assigned two attorneys to represent Gilmore: Lengyel-Leahu and Williams.   Lengyel-Leahu met with family members on June 8, 2009.   During that meeting, she made the following statements:  (1) the government could not legally charge Gilmore with the crime he was convicted of, and she would "show the judge"; (2) she would have Gilmore home "in a year"; (3) Ormsby was "lucky" that she represented Gilmore; (4) Ormsby could not trust the "po-dunk" attorneys in Kansas to defend Gilmore; (5) Gilmore's defense required someone with more knowledge than the "po-dunk" lawyers in Kansas; (6) she would show the judge that Gilmore's conviction did not require a life sentence; (7) she had convinced many judges in California to throw out similar cases; (8) she predicted that it would take a year, but Gilmore's sentence would be reduced or completely thrown out; (9) she opined that the conviction could be overturned because the district court had not instructed the jury on measurements, quantities, or amounts; and (10) Imhoff & Associates only used "the best attorneys."

At the time of the meeting, Lengyel-Leahu had (1) only been

6

handling federal drug cases for less than two years; (2) never litigated a federal drug sentencing; and (3) never handled a federal drug case that carried a mandatory life sentence.   In addition, at the time of the meeting, Williams had never handled a federal drug case.

Though Imhoff & Associates had promised to file a motion for new trial, Gilmore's trial counsel filed such a motion on June 1, 2009.   Neither Lengyel-Leahu nor Williams filed a motion to supplement the motion for new trial.   Following the filing of a response by the government, neither Lengyel-Leahu nor Williams filed a reply to the response.   Judge Lungstrum overruled the motion on July 10, 2009.

On August 14, 2009, the probation office submitted its presentence investigation report.   Neither Lengyel-Leahu nor Williams filed an objection to the report, even though it erroneously indicated that Gilmore possessed a firearm during the commission of the crime.   Neither Lengyel-Leahu nor Williams filed a sentencing memorandum on Gilmore's behalf.   At the sentencing hearing, Lengyel-Leahu appeared on Gilmore's behalf. Lengyel-Leahu's performance at the hearing drew criticism from Judge Lungstrum.   Gilmore was sentenced to life imprisonment.

On October 29, 2009, a notice of appeal was filed. Williams handled the appeal.   After a number of procedural mis-

7

steps with the Tenth Circuit, Williams filed a brief on June 11, 2010.   The Tenth Circuit also rejected his initial brief as deficient.   He filed a corrected brief two weeks later. Following the filing of a response brief, Williams did not file a reply brief.   On January 20, 2011, Williams argued the case to the Tenth Circuit. The Tenth Circuit dismissed the claims he had raised in an unpublished opinion on August 23, 2011.   Williams did not file a petition of certiorari with the United States Supreme Court.

Gilmore then filed a *pro se* motion to vacate his sentence under 28 U.S.C. § 2255.   The court took it under advisement and set it for an evidentiary hearing on Gilmore's claim that his trial counsel was deficient because "his counsel failed to advise him sufficiently concerning whether to plead guilty instead of proceeding to trial."   The court appointed counsel to represent Gilmore at the evidentiary hearing.

Following the evidentiary hearing, the court found that Gilmore "received constitutionally deficient representation in each of the [claimed] respects and that such representation undoubtedly prejudiced the outcome of the case."   As a remedy, Gilmore entered into a Sentencing Agreement with the government on May 30, 2013.   The court amended Gilmore's judgment on that date and sentenced him to 168 months.

8

IV.

Gilmore and Ormsby have asserted the following claims against the following defendants: (1) legal malpractice (Counts 1 and 2) against Imhoff & associates, Legyel-Leahu and Williams; (2) legal malpractice (Count 3) against Imhoff & Associates and Williams; (3) breach of contract (Count 4) against Imhoff & Associates; (4) negligent misrepresentation (Count 5) against Imhoff & Associates; (5) negligent misrepresentation (Count 6) against Lengyel-Leahu; (6) fraud (Count 7) against Imhoff & Associates; (7) fraud (Count 8) against Lengyel-Leahu; (8) fraud (Count 9) against Imhoff & Associates; (9) fraud (Count 10) against Legyel-Leahu; (10) fraud (Count 11) against Lengyel-Leahu; (11) violation of the KCPA (Counts 12 to 20) against Imhoff & Associates; (12) violation of the KCPA (Counts 21 to 27)[2] against Imhoff & Associates and Lengyel-Leahu.

A.  Legal Malpractice

Relying upon <u>Mashaney v. Bd. Indigents' Def. Servs.</u>, 49 Kan. App.2d 596, 313 P.3d 64 (2013), the defendants contend that plaintiffs' legal malpractice claims must fail because Gilmore has not pleaded any facts that he is "actually innocent."  The defendants also argue that Gilmore has not shown that he was

---

[2]There are two counts in the amended complaint designated as Count XXII.  The second Count XXII shall be considered by the court as Count XXIII.

exonerated through postconviction relief.

In Mashaney, the Kansas Court of Appeals, in a two to one decision, held that a plaintiff was required to establish his actual innocence by a preponderance of the evidence to prevail on a legal malpractice claim. 49 Kan.App.2d at 616. In doing so, the court acknowledged that "adopting such a requirement does not satisfy all concerns." Id. The court, however, recognized that "'civil recovery should not be a tool for shifting an individual's responsibility for the individual's criminal acts.'" Id.(quoting Shaw v. State Dept. Of Admin., 861 P.2d 566, 571 (Alaska 1993)). In response, plaintiffs contend that Mashaney is not the law in Kansas. This argument is based upon the contention that Mashaney is not final because petitions for review with the Kansas Supreme Court remain pending in the case. Plaintiffs point to Kan.Sup.Ct. Rule 8.03(i) which provides, in pertinent part:

> The timely filing of a petition for review shall stay the issuance of the mandate of the Court of Appeals. Pending the determination of the Supreme Court on the petition for review or during the time in which to file a petition for review, the opinion of the Court of Appeals is not binding on the parties, or on the district courts. Any interested person who wishes to cite a Court of Appeals opinion for persuasive authority before the mandate has issued shall note in the citation that the case is not final and may be subject to review or rehearing. If a petition for review is granted, the decision or opinion of the Court of Appeals has no force or effect, and the

mandate shall not issue.

Of course, even though Mashaney is not binding precedent, this court could draw guidance from its reasoning. But, given the fact that the Kansas Supreme Court failed to address this issue in Canaan v. Bartee, 276 Kan. 116, 72 P.3d 911 (2003), the court is not persuaded that we should follow Mashaney at this time. The court will not dismiss the legal malpractice claims on this basis at this point in the case.

The court also notes that the defendants have not addressed the issue of whether there is an exception to the rule requiring actual innocence when the malpractice occurs in the sentencing phase of the proceedings. The policy reasons for requiring proof of innocence might differ in the circumstances noted here. The court believes that it is unwise to embark on this discussion at this time since the parties have not addressed the particular circumstances here and the petitions for review remain pending in Mashaney.

The defendants next contend that dismissal is appropriate because Gilmore has not shown that he was exonerated on appeal or during post-conviction relief. The defendants contend that "while the court granted Gilmore pro se motion for postconviction relief, the court did not reverse his conviction or grant a new trial."

11

Kansas courts have established the following requirements in regard to legal malpractice claims in general:  (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage." Bergstrom v. Noah, 266 Kan. 847, 874, 974 P.2d 531 (1999). In addition, to prove legal malpractice in the handling of litigation, a plaintiff must establish the validity of the underlying claim by showing that it would have resulted in a favorable judgment in the underlying lawsuit had it not been for the attorney's error.   Webb v. Pomeroy, 8 Kan.App.2d 246, 249, 655 P.2d 465 (1982).  In criminal cases, a plaintiff must show that he was exonerated on postconviction relief.   Canaan, 276 Kan. at 131.

The court is persuaded that Gilmore was exonerated. Exoneration through postconviction relief for purposes of legal malpractice claims means having a conviction set aside and a new trial ordered.  Mashaney, 49 Kan.App.2d at 604.  Based upon the information before the court at this time, we are persuaded that Gilmore was exonerated by Judge Lungstrum.  In his ruling as alleged by plaintiffs, Judge Lungstrum found that Gilmmore had received "constitutionally deficient representation . . .and such representation undoubtedly prejudiced the outcome of his case."

12

He then granted Gilmore's § 2255 motion. Following that decision, Gilmore later admitted his guilt and was then re-sentenced. Thus, the court finds at this point that Gilmore was exonerated in the postconviction proceedings.

B. Breach of Contract

The defendants contend that plaintiffs' breach of contract claim fails because it is duplicative and arises in tort. The defendants argue that the gravamen of plaintiffs' action is the breach of a legal duty. Thus, they contend that plaintiffs' claims sound in tort. The defendants also contend that plaintiffs' breach of contract fails to allege any facts demonstrating causation. They assert that, according to plaintiffs' complaint, Gilmore's conviction did not result from the alleged conduct of the defendants, but rather from Gilmore's previous counsel. In addition, they contend that the damages alleged are not causally related to the alleged conduct that plaintiffs' assert was the contractual breach in this case.

Because an action for negligence against an attorney relies on a contract for employment, a legal malpractice claim generally contains elements of both tort and breach of contract. Pancake House, Inc. v. Redmond, 239 Kan. 83, 85-86, 716 P.2d 575 (1986). As a result, a legal malpractice claim can be brought as a breach of contract claim when "the act complained of is a

13

breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby." Id. at 86.   Nevertheless, when "the essential claim of the action is a breach of duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort." Id.   As explained in Pizel v. Zuspann, 247 Kan. 54, 72, 795 P.2d 42 (1990)(quotation and citation omitted):

> Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort.

Here, plaintiffs have alleged that the defendants violated the terms of the retainer contract.   They have stated that the contract entered into required that Imhoff & Associates do certain things.   They have further alleged that the defendants failed to perform these matters.   Thus, they have properly stated a breach of contract claim.   Double recovery will not be allowed where the damages are duplicative under the tort claim and the contract claim, but plaintiffs need not choose which claims they are going to pursue at this time.   A plaintiff may advance multiple theories of liability based either on a unitary course of conduct by a defendant or on a single legal injury.

14

Price, Administrator v. Holmes, 198 Kan. 100, 103-04, 422 P.2d 976 (1967)(plaintiff may plead causes of action in contract and in tort arising from a single transaction); Marshel Investments, Inc. v. Cohen, 6 Kan.App.2d 672, 679-80, 634 P.2d 133 (1981). Accordingly, the court does not find that plaintiffs' breach of contract claim should be dismissed for this reason at this time.

The court is also not persuaded that plaintiffs' breach of contract claim fails for lack of alleged causation. The defendants have made only a half-hearted effort to assert this argument. At a later date, the court would again consider it if the defendants provide some authority for its position.

C.  Negligent Misrepresentation/Fraudulent Misrepresentation

The defendants contend that the plaintiffs' claims of negligent misrepresentation and fraudulent misrepresentation contained in Counts 5, 6, 8, 10 and 11 must be dismissed because they are not actionable since they involve mere opinions or puffing or promised actions in the future.

To be actionable, an alleged negligent or fraudulent representation "must relate to past or present fact, as opposed to mere opinions or puffing or promised actions in the future." Timi v. Prescott State Bank, 220 Kan. 377, 389, 553 P.2d 315 (1976); see also VNA Plus, Inc. v. Apria Heathcare Group, Inc., 29 F.Supp.2d 1253, 1265-66 (D.Kan. 1998)("Puffing of wares, sales

15

propaganda, and other expressions of opinion common, are permitted, and should be expected. Those in the marketplace should recognize and discount such representations when deciding whether to go through with a transaction."). Whether a statement is presented as a fact, opinion, or statement of intent is a question of law. <u>Dill v. Barnett Funeral Home, Inc.</u>, 2004 WL 292124 at *5, 83 P.3d 1270 (Kan.App. 2004)(table).

The court has carefully reviewed the allegations asserted by plaintiffs in Counts 5, 6, 8, 10 and 11 of the amended complaint. The court is persuaded that all of the allegations contained in Counts 5 and 10 constitute puffery by Imhoff & Associates. All of these allegations concern the skill possessed by the Imhoff attorneys. As such, they are not actionable as negligent misrepresentations or fraudulent misrepresentations and must be dismissed for failure to state a claim upon which relief can be granted. <u>See</u>, <u>e.g.</u>, <u>Botes v. Weintraub</u>, 463 Fed.Appx. 879, 883 (11th Cir. 2012)(attorney's statements that certain judges were his "buddies" or that he would have "the run of the courtroom" constitute subjective opinion and puffing); <u>Alexander v. Cahill</u>, 598 F.3d 79, 95 (2nd Cir.)(use by attorneys of phrases such as "heavy hitters," "think big," and "we'll give you a big helping hand" in advertising is puffery), <u>cert. denied</u>, 131 S.Ct. 820 (2010; <u>Cook, Perkiss and</u>

16

Liehe, Inc. v. Northern Calif. Collection Serv. Inc., 911 F.2d 242, 244, 246 (9th Cir. 1990)(cost advantages of one law firm over another law firm was nonactionable puffery); Bellinson Law, LLC v. Iannucci, 951 N.Y.S.2d 84, 2012 WL 1473440 at * 8 (N.Y.Sup. 2012)(table case)("[M]ere puffery by an attorney of his skills is not actionable as fraud."); see also Golden v. Den-Mat Corp., 47 Kan.App.2d 450, 482, 276 P.3d 773(2012)(seller's representation that products are "first rate" or "the finest around" are examples of puffing).

The court has similar concerns about most of the allegations contained in Counts 6, 8 and 11. The court finds that the following alleged misrepresentations are not actionable as opinions or puffery: (1) the government could not legally charge Gilmore with the crime he was convicted of, and she would "show the judge"; (2) Ormsby was "lucky" that she represented Gilmore; (3) Ormsby could not trust the "po-dunk" attorneys in Kansas to defend Gilmore; (4) Gilmore's defense required someone with more knowledge than the "po-dunk" lawyers in Kansas; (5) she opined that the conviction could be overturned because the district court had not instructed the jury on measurements, quantities, or amounts; and (6) Imhoff & Associates only used "the best attorneys."

The following allegations allegedly made by Lengyel-Leahu

17

are not actionable as promised actions in the future: (1) she would have Gilmore home "in a year"; (2) she would show the judge that Gilmore's conviction did not require a life sentence; and (3) she would have the Gilmore's sentence reduced or completely thrown out in a year. See Botes, 463 Fed.Appx. at 884(attorney's promises that he would learn the case, prepare for trial, zealously represent the client, and not withdraw from representation not actionable because they are promises to perform some act in the future); Lawson v. Cagle, 504 So.2d 226 (Ala. 1987)(attorney who told plaintiff that his dismissed case would be reinstated and he would obtain a million dollar judgment did not make a misrepresentation of a material existing fact because it was a prediction of a future event).

This leaves the following allegation which the court finds states a claim for negligent misrepresentation/fraudulent misrepresentation: Lengyel-Leahu had convinced many judges in California to throw out similar cases. The court shall grant defendants' motion on these counts except for the aforementioned allegation. Accordingly, only this allegation in Counts 6 and 11 remains.

D. Fraud

The court shall next turn to plaintiffs' fraud allegations contained in Counts 7 and 9. The court is not entirely clear

18

why these two claims are stated separately.  In each instance,
plaintiffs allege that Imhoff & Associates committed fraud by
promising that it would file a motion for new trial for Gilmore
when it had no intention to do so.  The only difference is that
Count 9 contains some additional allegations in support of the
claim.

Imhoff & Associates argues that plaintiffs have failed to
state a claim for fraud because they have only alleged that
Imhoff & Associates' promise to perform was accompanied by an
intent not to do so.  Imhoff & Associates points to several
cases in support of their of contention including Roberts v.
Wells Fargo AG Credit Corp., 990 F.2d 1169, 1173 (10th Cir. 1993)
and Thomas v. Talbott Recovery Sys. Inc., 982 F.Supp. 794, 799
(D.Kan. 1997).

The court agrees with the defendants that plaintiffs will
ultimately have to show more than an intent not to perform the
contract.  See Thomas, 982 F.Supp. at 799 ("Other circumstances
of a substantial character must exist which would support an
inference of wrongful intent at the time of making the
representation.").  However, the court finds that plaintiffs have
asserted a plausible claim of fraud in Count 9.  Under Kansas
law, to state a claim for fraud, a plaintiff must allege: (1)
false or untrue representations were made as a statement of

material fact; (2) the representations were known to be false or untrue by the party making them, or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon the representations. See Slaymaker v. Westgate State Bank, 241 Kan. 525, 531, 739 P.2d 444 (1987). In Count 9, plaintiffs have adequately alleged a claim of fraud under Kansas law. The cases relied upon by the defendants involved matters that were decided at the summary judgment stage, rather than the dismissal stage. The argument raised by the defendants must be considered at a later time. The court shall, however, dismiss plaintiffs' Count 7 because it is duplicative of Count 9.

E.  KCPA

The defendants contend that plaintiffs' KCPA claims fail to state a claim upon which relief can be granted and are time-barred. The defendants contend that the allegations of each of the KCPA claims asserted by the plaintiffs fail to rise to the level of unconscionability required by the act. The defendants further contend that plaintiffs have failed to plead any facts demonstrating unconscionable conduct through a disparity of

bargaining power, lack of knowledge or lack of voluntariness. The defendants have also suggested that plaintiffs' claims are not actionable under the KCPA because they constitute mere puffery. Finally, defendants argue that plaintiffs' KCPA claims are time-barred because they accrued in 2009 or 2010, over three years prior to the filing of this action.

Plaintiffs counter that their claims are based upon the part of the KCPA that bars deceptive acts, not unconscionable acts as suggested by the defendants. They further contend that their KCPA claims are not time-barred because the statute of limitations did not begin to run until the Tenth Circuit issued its decision on August 23, 2011. Thus, they argue that these claims are timely filed because this action was filed on January 27, 2014.

In Counts 12 through 27, plaintiffs have alleged KCPA claims against the defendants. In each count, plaintiffs allege that the defendants made certain statements that were deceptive misrepresentations that they relied upon which caused emotional trauma and emotional damage. The alleged deceptive misrepresentations are as follows: (1) Count 12--Imhoff & Associates had "qualified' attorneys"; (2) Count 13--Imhoff & Associates had "aggressive attorneys"; (3) Count 14--Imhoff &

Associates attorneys "did not give up easily"; (4) Count 15--
Imhoff & Associates had the "most competent attorneys available";
(5) Count 16--Imhoff & Associates had the "most experienced
attorneys available"; (6) Count 17--Imhoff & Associates had the
"most effective attorneys available"; (7) Count 18--Imhoff &
Associates had "resourceful attorneys"; (8) Count 19--Imhoff &
Associates had attorney who were "intimately familiar with all
facets of criminal defense"; (9) Count 20--Imhoff & Associates
was the "former Johnny Cochran Law Firm"; (10) Count 21--Imhoff &
Associates and Lengyel Leahu's legal services "would result in
Gilmore's release in one year"; (11) Count 22--Imhoff & Associates
and Lengyel-Leahu's legal services would "show the judge that
Gilmore could not legally have been convicted of the crime
Gilmore was convicted of"; (12) Count 23--Imhoff & Associates and
Lengyel-Leahu's legal services were "greater than the po-dunk
lawyers in Kansas"; (13) Count 24--Imhoff & Associates and
Lengyel-Leahu's legal services would "show the judge that
Gilmore's conviction did not require a life sentence"; (14) Count
25--Imhoff & Associates and Lengyel-Leahu's legal services had
"convinced many judges in California to throw out similar cases";
(15) Count 26--Imhoff & Associates and Lengyel-Leahu's legal
services would "result in Gilmore's conviction being thrown out
because the judge had not instructed the jury on measurements,

22

quantities, or amounts"; and (16) Count 27--Imhoff & Associates used "only the best attorneys".

The KCPA prohibits deceptive and unconscionable acts in connection with a consumer transaction. K.S.A. §§ 50-626(a); 50-627(a). The purpose of the KCPA is to protect consumers from suppliers who commit deceptive and unconscionable practices and to protect consumers from unbargained for warranty disclaimers. K.S.A. § 50-623. The court must liberally construe the KCPA to promote these policies. Id. The statute of limitations under the KCPA is three years. K.S.A. § 60-512(2).

The question of when a cause of action accrues under the KCPA has been the source of some discussion in the Kansas Court of Appeals and by Judge Crow in this court. The Kansas Court of Appeals has determined that the statute of limitations under the KCPA begins "running with the occurrence of the alleged conduct constituting the violation, not the discovery of the violations." Campbell v. Hubbard, 41 Kan.App.2d 1, 7-8, 201 P.3d 702, rev. denied, 286 Kan. 1176 (2008); see also Four Seasons Apartments, Ltd. v. AAA Glass Serv., Inc., 37 Kan.App.2d 248, 152 P.3d 101 (2007).

In Rinehart v. St. Luke's South Hosp., Inc., 2011 WL 3348234 (D.Kan. 2011), Judge Crow carefully considered the issue of accrual in KCPA cases. He recognized the decisions rendered by

23

the Kansas Court of Appeals on the issue, but held that the application of K.S.A. 50-634 required that the limitation period for a KCPA action commenced when the KCPA violation occurred and "aggrieved" the consumer.   2011 WL 3348234 at * 9.   Judge Crow found, based upon the Kansas Supreme Court's decision in Finstad v. Washburn Univ., 252 Kan. 465, 845 P.2d 685 (1993), that accrual of a KCPA claim is not delayed until the consumer suffers or assesses the extent of actual monetary damages.   Id. But, he determined that the accrual of the KCPA claim started when the KCPA violation caused the consumer to be aggrieved which Finstad described as the "invasion of a legal right, 'denial of some personal or property right, or the imposition upon a party of some burden or obligation.'" Id.(quoting Finstad, 252 Kan. at 472).

In Golden v. Den-Mat Corp., 47 Kan.App.2d 450, 276 P.3d 773 (2012), the Kansas Court of Appeals applied an analysis similar to Judge Crow's in Rinehart.   There, plaintiff brought a KCPA claim based upon some dental veneers she had purchased.   She brought the claims against the dentist who installed the veneers and the company who manufactured them.   She claimed that the manufacturer had committed a deceptive act when it indicated the veneers would not stain or darken and made claims about the overall durability of the veneers.   The defendant manufacturer

24

argued that the statute of limitations began to run when plaintiff received a brochure with the representations about the veneers.  The Court of Appeals noted that the representations in the brochure might constitute a violation of the KCPA.  47 Kan.App.2d at 470.  But, in light of Finstad, the Golden court found that the statute of limitations did not begin to run until the consumer was "aggrieved." Id. at 471.  Thus, the limitations period did not begin to run until plaintiff had "suffered a loss," i.e., until she "paid for and received the object of the consumer transaction." Id.  The Court of Appeals found that plaintiff became aggrieved when the veneers were delivered to the plaintiff. Id.

The court shall apply the analysis established in Rinehart and Golden.  Plaintiffs have suggested that they became aggrieved when the Tenth Circuit issued its opinion on Gilmore's direct appeal.  Plaintiffs argue that because Ormsby hired Imhoff & Associates to represent Gilmore through the appeals process, they "received the object of the consumer transaction" when the Tenth Circuit released its opinion in August 2011.  The defendants, however, contend the object of the transaction was not the receipt of the opinion, but rather "the filing and submission of the appeal," which occurred no later than June 2010.  The defendants suggest that "once the appeal was submitted

25

to the Tenth Circuit, the presentation was complete and there was nothing more for the Defendants to complete."

The question of exactly when the plaintiffs were aggrieved is not entirely clear given the many deceptive practices that are alleged, but they were certainly aggrieved by at least June 2010 at the latest.  By that time, plaintiffs had already suffered a loss in the sense over $50,000 had been paid to the defendant.  In addition, plaintiffs had not achieved any success on the matters that the defendants were handling.  Judge Lungstrum had ruled against all of the arguments made by the defendants.  The defendants had failed to file the motion for new trial.  Gilmore's motion for new trial, which was filed by his trial counsel, had been denied and he had received a life sentence.  Once the appeal was filed, the defendants had done everything that they had agreed to do under the retainer contract.  Thus, at this point, any claim under the KCPA started running as the plaintiffs had received the object of their transaction.  See Campbell, 41 Kan.App.2d at 7(legal malpractice claim accrued when attorneys quit representing him, rather than when he lost lawsuit in which attorneys had represented him).  Since this action was filed over three years after June 2010, plaintiffs' claims under the KCPA are time-barred.  With this decision, the court shall dismiss plaintiffs' KCPA claims.

26

As an additional note, it is clear that a number of plaintiffs' KCPA claims are not actionable as puffery. The 1975 Kansas Comment to K.S.A. 50-626 indicates that the KCPA is only "intended to cover those cases where the supplier goes beyond innocent 'puffing' expected by the consumer." The Kansas Supreme Court has made clear that claims based upon "innocent puffing" are not within the purview of the KCPA. Baldwin v. Priem's Pride Motel, 224 Kan. 432, 435, 580 P.2d 1326 (1978). The following KCPA claims are subject to dismissal for this reason: Counts 12, 13, 14, 15, 16, 17, 18, 19, 23 and 27. As previously noted, these statements are the kinds of sales talk that are not actionable. The statements are not actionable because they are subjective in nature and non-specific. Accordingly, these claims are also subject to dismissal as innocent puffing.

With this decision on the KCPA claims, the court need not consider any of the other arguments raised by the parties.

V.

Based on the foregoing, the court shall grant in part and deny in part defendants' motion to dismiss. The court shall dismiss the following counts for failure to state a claim upon which relief can be granted: Counts 5, 6(except for the allegation that Lengyul-Leahu convinced many judges in California to throw out similar cases), 10 and 11(except for the

27

allegation that Lengyul-Leahu convinced many judges in California to throw out similar cases). The court shall dismiss the following count as duplicative of Count 9: Count 7. The court shall also dismiss the following KCPA claims as time-barred: Counts 12 through 27.

IT IS THEREFORE ORDERED that plaintiff's motion to strike new arguments in defendants' reply (Doc. # 24) be hereby granted. The court will not consider the arguments of the defendants noted in plaintiffs' motion.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiffs' complaint (Doc. # 9) be hereby granted in part and denied in part in accordance with the foregoing memorandum.

**IT IS SO ORDERED.**

Dated this 22ND day of August, 2014, at Topeka, Kansas.


                              S/RICHARD D. ROGERS
                              Richard D. Rogers
                              United States District Judge

28